IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01220-ZLW-MJW

NEAL BEIDLEMAN, CAROLINE MACKENZIE and JEANNIE PRICE

    Plaintiffs,

v.

HOUGHTON MIFFLIN HARCOURT PUBLISHING COMPANY and
R.R. DONNELLEY & SONS COMPANY,

    Defendants.

## HOUGHTON MIFFLIN HARCOURT'S ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT

Defendant Houghton Mifflin Harcourt Publishing Company ("HMH"), for its Answer to the Third Amended Complaint in the above-entitled action, states as follows:

### STATEMENT OF ACTION

This is an action for copyright infringement and related claims brought by Plaintiffs Beidleman, the holder of all copyrights to two photographs described hereafter; Mackenzie, the holder of all copyrights to one photograph described hereafter; and Price, the holder of all copyrights to one photograph described hereafter, all originally licensed for limited use by defendant HMH against Defendants for unauthorized uses of Plaintiffs' copyrighted works.

**ANSWER:**   HMH admits that Plaintiffs purport to bring this action for copyright infringement and related claims and that Plaintiffs claim Defendants made unauthorized uses of the alleged copyrighted works referenced by Plaintiffs.  HMH admits that it licensed for particular uses the right to reproduce the photographs referenced by Plaintiffs.  HMH admits that Plaintiffs purport to be the holders of all copyrights to the respective referenced photographs, but

lacks information sufficient to form a belief as to the truth of these allegations and, accordingly, neither admits nor denies them.  HMH denies the remaining allegations of the "Statement of Action."

## PARTIES

1.     Neal Beidleman is a United States citizen residing in Aspen, Colorado, and a professional aerospace engineer, inventor, mountaineer and photographer.

**ANSWER:**   HMH lacks information sufficient to form a belief as to the truth of the allegations of paragraph 1 and, accordingly, neither admits nor denies them.

2.     Carolyn Mackenzie is a New Zealand citizen residing in Christchurch, New Zealand and a medical provider and photographer.

**ANSWER:**   HMH lacks information sufficient to form a belief as to the truth of the allegations of paragraph 2 and, accordingly, neither admits nor denies them.

3.     Jeanie Price is a United States citizen residing in Bellevue, Washington and the surviving spouse and heir of Scott Fisher (Fischer), a world famous mountaineer and Mt. Everest expedition leader.

**ANSWER:**   HMH lacks information sufficient to form a belief as to the truth of the allegations of paragraph 3 and, accordingly, neither admits nor denies them.

4.     HMH is a publisher with its primary offices in Boston, Massachusetts.  HMH regularly does business in Colorado and sells and distributes its textbooks all over the United States, including *Elements of Literature, Fourth Course, 2000 edition* and *Holt Literature and Language Arts, Fourth Course, 2003 edition,* in which Plaintiffs' works are unlawfully

reproduced as hereafter described.  At all relevant times, HMH acted through its division, Holt, Rinehart and Winston (HRW), a textbook publisher.

**ANSWER:**     HMH states that the allegation of paragraph 4 that the referenced photographs have been "unlawfully reproduced" states a legal conclusion to which no answer is required.  To the extent an answer is required, HMH denies said allegation. HMH admits the remaining allegations of paragraph 4.

5.     RR Donnelley & Sons Company is the world's premier full-service printer with its global headquarters in Chicago, Illinois.

**ANSWER:**     HMH admits that R.R. Donnelley is a printer and otherwise lacks information sufficient to form a belief as to the truth of the allegations of paragraph 5 and, accordingly, neither admits nor denies them.

## JURISDICTION AND VENUE

1.     This is an action for injunctive relief, monetary damages, punitive damages, and interest under the copyright laws of the United States and Colorado common law.

**ANSWER:**     The allegations of paragraph 1 state legal conclusions to which no answer is required.  To the extent an answer is required, HMH denies the allegations of paragraph 1.

2.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

**ANSWER:**     The allegations of paragraph 2 state legal conclusions to which no answer is required.

3.     Venue is appropriate in this District pursuant to 28 U.S.C. §§ 1391(a) and (b) and 28 U.S. C. §§ 1400(a).

**ANSWER:**   The allegations of paragraph 3 state legal conclusions to which no answer is required.

### FACTS COMMON TO ALL COUNTS

1.   Beidleman, Mackenzie, and Fischer participated in the 1996 Mt. Everest expedition as a guide, base camp doctor and expedition leader, respectively.  Beidleman and Mackenzie survived the "deadliest day on Everest" as May 10, 1996 came to be known, but eight others did not, including expedition leaders Scott Fischer and Rob Hall.

**ANSWER:**   HMH lacks information sufficient to form a belief as to the truth of the allegations of paragraph 1 and, accordingly, neither admits nor denies them.

2.   Beidleman is the owner, creator and exclusive copyright holder of two original works of photography, "rope in wind" and "Doug Hansen approaching the summit" (copies of which are attached as exhibits 1 and 2 respectively) duly registered with the U.S. Copyright Office as #VA 1-340-735, which Defendants have unlawfully used without Beidleman's authority, license or permission.

**ANSWER:**   HMH states that the allegation of paragraph 2 that the referenced photographs have been "unlawfully used" states a legal conclusion to which no answer is required.  To the extent an answer is required, HMH denies said allegation.  HMH, upon information and belief, admits that "rope in wind" and "Doug Hansen approaching the summit" are registered with the U.S. Copyright Office, but denies that such photographs were registered prior to the infringement alleged in plaintiffs' third amended complaint or within three months of the first publication of the photographs.  HMH lacks information sufficient to form a belief as to

{00238767.DOC}

4

the truth of the remaining allegations of paragraph 2 and, accordingly, neither admits nor denies them.

    3.    The photograph "rope in wind" was taken by Beidleman on May 10, 1996 as he was ascending Mt. Everest.  "Rope in wind" captures the stark, forbidding beauty of Everest at the Hillary Step, some two hundred feet from the 29,035 foot summit.  Beidleman's photograph "Doug Hansen approaching the summit" is the last known photograph of one of Rob Hall's client-climbers who reached the summit but died of oxygen deprivation and exposure in the storm that engulfed him later that day.

    **ANSWER:**    HMH lacks information sufficient to form a belief as to the truth of the allegations of paragraph 3 and, accordingly, neither admits nor denies them.

    4.    Mackenzie is the owner, creator and exclusive copyright holder of an original work of photography, "Rob Hall/Adventure Consultants group photograph" (a copy of which is attached as exhibit 3) duly registered with the U.S. Copyright Office as #VA 1-421-808, which Defendants have unlawfully used without Mackenzie's authority, license or permission.

    **ANSWER:**    HMH states that the allegation of paragraph 4 that the referenced photograph has been "unlawfully used" states a legal conclusion to which no answer is required. To the extent an answer is required, HMH denies said allegation.  HMH, upon information and belief, admits that "Rob Hall/Adventure Consultants group photograph" is registered with the U.S. Copyright Office, but denies that such photograph was registered prior to the infringement alleged in plaintiffs' third amended complaint or within three months of the first publication of the photograph.  HMH lacks information sufficient to form a belief as to the truth of the remaining allegations of paragraph 4 and, accordingly, neither admits nor denies them.

5.      Mackenzie's photograph "Rob Hall/Adventure Consultants group photograph" was taken at the Mt. Everest base camp before the catastrophic storm struck.

**ANSWER:**   HMH lacks information sufficient to form a belief as to the truth of the allegations of paragraph 5 and, accordingly, neither admits nor denies them.

6.      Price, as Fischer's heir, is the exclusive copyright holder of an original work of photography, "Rob Hall standing portrait" (a copy of which is attached as exhibit 4) duly registered with the U.S. Copyright Office as #VA 1-426-155, which Defendants have unlawfully used without Price's authority, license or permission.

**ANSWER:**   HMH states that the allegation of paragraph 6 that the referenced photograph has been "unlawfully used" states a legal conclusion to which no answer is required. To the extent an answer is required, HMH denies said allegation.  HMH, upon information and belief, admits that "Rob Hall standing portrait" is registered with the U.S. Copyright Office, but denies that such photograph was registered prior to the infringement alleged in plaintiffs' third amended complaint or within three months of the first publication of the photograph.  HMH lacks information sufficient to form a belief as to the truth of the remaining allegations of paragraph 6 and, accordingly, neither admits nor denies them.

7.      Because HRW recognized the events surrounding the 1996 Mt. Everest expedition are compelling on many levels, HRW sought to include the story, told in part using Plaintiffs' photographs, in its 10th grade literature textbooks.  Knowing it needed Plaintiffs' permission to use their photographs, HRW contacted Plaintiffs, through their agent, as detailed below.

**ANSWER:**   HMH admits that it sought and obtained licenses for the referenced photographs for use in the referenced textbooks from a third party that, upon information and belief, represented Plaintiffs' interests.  HMH denies the remaining allegations of paragraph 7.

8.   In 1999 Beidleman, Mackenzie and Price, acting through their agent Woodfin Camp & Associates (WC&A), sold HRW limited licenses (copies of which are attached as exhibit 5) to copy and print 40,000 copies of their photographs (the photographs) in the year 2000 edition of HRW's textbook *Elements of Literature, Fourth Course*, for distribution in the United States.

**ANSWER:**   HMH responds to the allegations of paragraph 8 by stating that it obtained licenses for the referenced photographs for use in the referenced textbook from WC&A and referring to the relevant license documents for their terms.

9.   In 2002 Beidleman, Mackenzie and Price, acting through their agent WC&A, sold HRW limited licenses (copies of which are attached as exhibit 6) to copy and print under 40,000 copies of the photographs in the year 2003 edition of HRW's textbook *Holt Literature and Language Arts, Fourth course*, for distribution in the United States.

**ANSWER:**   HMH responds to the allegations of paragraph 9 by stating that it obtained licenses for the referenced photographs for use in the referenced textbook from WC&A and referring to the relevant license documents for their terms.

10.   In 2003, Beidleman, Mackenzie and Price, acting through their agent Woodfin Camp & Associates (WC&A), sold HRW limited licenses (copies of which are attached as exhibit 7) to copy and print under 100,000 copies of the photographs in the year 2005-2010

edition of HRW's textbook *Elements of Literature*, *Fourth Course*, for distribution in the United States.

**ANSWER:** HMH responds to the allegations of paragraph 10 by stating that it obtained licenses for the referenced photographs for use in the referenced textbook from WC&A and referring to the relevant license documents for their terms.

11. WC&A was induced to price and sell geographically limited licenses for 40,000 copies or 100,000 copies of the photographs because of HRW's misrepresentation that it was seeking limited licenses for North American or United States distribution of the textbooks for a "press run calculated at 40,000" and for "an anticipated print run of under 40,000" and for a "PRESS RUN: Under 100,000" (see exhibits 8, 9 and 10 respectively), which set forth the identity of the persons making the misrepresentations, the time, place and content of the misrepresentations, and the method by which the misrepresentations were communicated to Plaintiffs' agent) [sic].

**ANSWER:** HMH denies the allegations of paragraph 11.

12. At the time HRW represented to WC&A it needed distribution and copy limited licenses to use the photographs in the years 2000 and 2005-2010 editions of *Elements of Literature, Fourth Course* and in the year 2003 edition of *Holt Literature and Language Arts, Fourth Course*, HRW knew its actual use would greatly exceed the permission it sought.

**ANSWER:** HMH denies the allegations of paragraph 12.

13. HRW printed hundreds of thousands of copies of the 2000 and 2003 editions of *Elements of Literature*, *Fourth Course*, but licensed rights to print 40,000 copies of the 2000 edition only. HRW printed hundreds of thousands copies of the 2005-2010 edition of *Elements*

*of Literature, Fourth Course* but licensed rights to print under 100,000 copies. Upon information and belief, HRW distributed *Elements of Literature, Fourth Course* beyond the permitted geographic area.

**ANSWER:** HMH responds to the allegations of paragraph 13 by stating that it caused to have printed hundreds of thousands of copies of the referenced textbooks and distributed some of those copies outside of the United States, and referring to the relevant license documents for the terms thereof.

14. HRW printed hundreds of thousands copies of *Holt Literature and Language Arts, Fourth Course* but licensed rights to print under 40,000 copies.

**ANSWER:** HMH responds to the allegations of paragraph 14 by stating that it caused to have printed hundreds of thousands of copies of the referenced textbook and referring to the relevant license documents for the terms thereof.

15. When HRW exceeded the permissions it has been granted, HRW had a duty in equity and good conscience to disclosed [sic] these facts to Plaintiffs and WC&A. This is especially so because HRW knew precisely when it exceeded the licenses in printing, distribution, and sale of these textbook. Plaintiffs and WC&A had no such knowledge nor any reason to assume HRW was being deceitful in the use it was making of the photographs. HRW intended by its misrepresentations to obtain access to the photographs at a lower cost than it would have paid had it been honest in its dealings with Plaintiffs and WC&A and to conceal the copyright infringements that followed. HRW's false and misleading misrepresentations did deceive Plaintiffs and WC&A, and did conceal the copyright infringements that followed.

**ANSWER:** HMH denies the allegations of paragraph 15.

16. Since HRW fraudulently concealed its intended and unauthorized use of the photographs, Plaintiffs and WC&A were precluded, as a practical matter, from legally addressing HRW's wrongdoing.

**ANSWER:** HMH denies the allegations of paragraph 16.

17. In 2007 Plaintiffs and WC&A, for the first time, discovered that HRW was using the photographs in its unlicensed, unauthorized, and uncompensated printings and distributions of the year 2000 and subsequent editions of *Elements of Literature, Fourth Course,* and the year 2003 edition of *Holt Literature and Language Arts, Fourth Course,* in violation of Plaintiffs' copyrights.

**ANSWER:** HMH denies the allegations of paragraph 17.

18. HRW knew that its illegal use of the photographs over numerous years greatly exceeded the licenses it sought and paid for. Yet even after an inquiry by Beidleman, HRW failed by its letter dated March 7, 2007 to Beidleman's counsel to honestly disclose its uses and thereafter failed to contact Plaintiffs Mackenzie or Price, or any other copyright holders similarly defrauded, to disclose its illegal uses and attempt to rectify the matter. HRW failed to cease and instead continues to infringe Plaintiffs' copyrights to this day.

**ANSWER:** HMH denies the allegations of paragraph 18.

19. HRW's fraud was effective and worked as intended. For years the infringements that followed HRW's fraud were concealed. But for the fortuitous discovery of HRW's fraudulent acts by Beidleman, the infringing acts of HRW would still be concealed, as HRW intended.

**ANSWER:** HMH denies the allegations of paragraph 19.

20. HRW hired Defendant RR Donnelley to print Plaintiffs' copyrighted works in *Elements of Literature, Fourth Course,* and *Holt Literature and Language Arts, Fourth course.* RR Donnelly printed copies of Plaintiffs' copyrighted works without their license, authority or permission and has earned profits by such printings.

**ANSWER:** HMH admits that it retained R.R. Donnelley & Sons Company to print *Elements of Literature, Fourth Course* and *Holt Literature and Language Arts, Fourth course*. HMH denies the remaining allegations of paragraph 20.

### COUNT I
### COPYRIGHT INFRINGEMENT AGAINST HMH RE: ELEMENTS OF LITERATURE, 2000 EDITION

21. Plaintiffs repeat and reallege paragraphs 1 through 20 of this complaint with the same force and effect as if set forth in full above.

**ANSWER:** HMH incorporates its answers to the referenced paragraphs 1 through 20.

22. The foregoing acts of Defendant HRW in printing and distributing the year 2000 edition of *Elements of Literature, Fourth Course,* constitute infringements of Plaintiffs' copyrights in the photographs in violation of 17 U.S.C. § 501 et seq.

**ANSWER:** The allegations of paragraph 22 state legal conclusions to which no answer is required. To the extent an answer is required, HMH denies the allegations of paragraph 22.

23. Plaintiffs suffered damages as a result of HRW's unauthorized use of their photographs.

**ANSWER:** HMH denies the allegations of paragraph 23.

## COUNT II
## COPYRIGHT INFRINGEMENT AGAINST HMH RE: ELEMENTS OF LITERATURE, 2003 EDITION

24.     Plaintiffs repeat and reallege paragraphs 1 through 23 of this complaint with the same force and effect as if set forth in full above.

**ANSWER:**    HMH incorporates its answers to the referenced paragraphs 1 through 23.

25.     The foregoing acts of HRW in printing and distributing the year 2003 edition of *Elements of Literature, Fourth Course,* constitute infringements of Plaintiffs' copyrights in the photographs in violation of 17 U.S.C. § 501 et seq.

**ANSWER:**    The allegations of paragraph 25 state legal conclusions to which no answer is required.  To the extent an answer is required, HMH denies the allegations of paragraph 25.

26.     Plaintiffs suffered damages as a result of defendant HRW's unauthorized use of their photographs.

**ANSWER:**    HMH denies the allegations of paragraph 26.

## COUNT III
## COPYRIGHT INFRINGEMENT AGAINST HMH RE: ELEMENTS OF LITERATURE, 2005-2010 EDITION

27.     Plaintiffs repeat and reallege paragraphs 1 through 26 of this complaint with the same force and effect as if set forth in full above.

**ANSWER:**    HMH incorporates its answers to the referenced paragraphs 1 through 26.

28.     The foregoing acts of HRW in printing and distributing the years 2005-2010 edition of *Elements of Literature, Fourth Course,* constitute infringements of Plaintiffs' copyrights in the photographs in violation of 17 U.S.C. § 501 et seq.

**ANSWER:**  The allegations of paragraph 28 state legal conclusions to which no answer is required.  To the extent an answer is required, HMH denies the allegations of paragraph 28.

29.  Plaintiffs suffered damages as a result of defendant HRW's unauthorized use of their photographs.

**ANSWER:**  HMH denies the allegations of paragraph 29.

## COUNT IV
## COPYRIGHT INFRINGEMENT AGAINST HMH RE: HOLT LITERATURE AND LANGUAGE ARTS

30.  Plaintiffs repeat and reallege paragraphs 1 through 29 of this complaint with the same force and effect as if set forth in full above.

**ANSWER:**  HMH incorporates its answers to the referenced paragraphs 1 through 29.

31.  The foregoing acts of HRW in printing *Holt Literature and Language Arts, Fourth Course,* constitute infringements of Plaintiffs' copyrights in the photographs in violation of 17 U.S.C. § 501 et seq.

**ANSWER:**  The allegations of paragraph 31 state legal conclusions to which no answer is required.  To the extent an answer is required, HMH denies the allegations of paragraph 31.

32.  Plaintiffs suffered damages as a result of defendant HRW's unauthorized use of their photographs.

**ANSWER:**  HMH denies the allegations of paragraph 32.

## COUNT V
## FRAUD AGAINST HMH

33. Plaintiffs repeat and reallege paragraphs 1 through 32 of this complaint with the same force and effect as if set forth in full above.

**ANSWER:** HMH incorporates its answers to the referenced paragraphs 1 through 32.

34. The foregoing acts of HRW constitute fraud in violation of Colorado common law.

**ANSWER:** The allegations of paragraph 34 state legal conclusions to which no answer is required. To the extent an answer is required, HMH denies the allegations of paragraph 34.

35. Plaintiffs suffered damages as a result of HRW's fraud.

**ANSWER:** HMH denies the allegations of paragraph 35.

## COUNT VI
## FRAUDULENT CONCEALMENT AGAINST HMH

36. Plaintiffs repeat and reallege paragraphs 1 through 35 of this complaint with the same force and effect as if set forth in full above.

**ANSWER:** HMH incorporates its answers to the referenced paragraphs 1 through 35.

37. The foregoing acts of HRW constitute fraudulent concealment in violation of Colorado common law.

**ANSWER:** The allegations of paragraph 37 state legal conclusions to which no answer is required. To the extent an answer is required, HMH denies the allegations of paragraph 37.

38. Plaintiffs suffered damages as a result of Defendant HRW's fraudulent concealment.

**ANSWER:** HMH denies the allegations of paragraph 38.

## COUNT VII
## COPYRIGHT INFRINGEMENT AGAINST RR DONNELLEY

39. Plaintiffs repeat and reallege paragraphs 1 through 38 of this complaint with the same force and effect as if set forth in full above.

**ANSWER:** HMH incorporates its answers to the referenced paragraphs 1 through 38.

40. The foregoing acts of RR Donnelley constitute infringements of Plaintiffs' copyrights in the photographs in violation of 17 U.S.C. § 106(1).

**ANSWER:** The allegations of paragraph 40 state legal conclusions to which no answer is required. To the extent an answer is required, HMH denies the allegations of paragraph 40.

41. Plaintiffs suffered damages as a result of RR Donnelley's unauthorized printing of their photographs.

**ANSWER:** HMH denies the allegations of paragraph 41.

## AFFIRMATIVE DEFENSES

1. The Third Amended Complaint fails to state a claim upon which relief can be granted.

2. Plaintiffs' claims are barred, in whole or in part, by applicable statutes of limitations.

3. Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

4. Plaintiffs' claims are barred, in whole or in part, by equitable estoppel.

5. Plaintiffs' purported fraud and fraudulent concealment claims are barred by Plaintiffs' failure to plead the claims with particularity.

6. Plaintiffs' purported fraud and fraudulent concealment claims are barred because they are preempted by the Copyright Act.

WHEREFORE, HMH demands Judgment:

A. Dismissing the Third Amended Complaint with prejudice and in its entirety;

B. Awarding HMH its costs and reasonable attorneys' fees; and

C. Awarding HMH such other and further relief as may be just and proper.

DATED: May 30, 2008

Respectfully submitted,

*s/ Lawrence G. Katz*
Jeffrey A. Chase, #05203
Lawrence G. Katz, #32724
JACOBS CHASE FRICK KLEINKOPF & KELLEY LLC
1050 17th Street, Ste 1500
Denver, CO 80265
Telephone: 303-685-4800
Fax: 303-685-4869
E-mail: jchase@jcfkk.com
lkatz@jcfkk.com

Michael T. Mervis
Jessica Sonenshein
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036
Telephone: 212-969-3565
Fax: 212-969-2900
E-mail: mmervis@proskauer.com
jsonenshein@proskauer.com
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

       I hereby certify that on May 30, 2008, I electronically filed the foregoing **HOUGHTON MIFFLIN HARCOURT'S ANSWER TO PLAINTIFFS' THIRD AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Christopher Seidman
chrisseidman@qwest.net
HARMON & SIEDMAN LLC
P.O. Box 3207
Grand Junction, CO 81502
970-245-9075
970-245-8086 (fax)

Maurice Harmon
Maurice@harmonseidman.com
HARMON & SEIDMAN LLC
The Pennsville School
533 Walnut Drive
Northampton, PA 18067
610-262-9288
610-262-9288 (fax)

Michael T. Mervis
mmervis@proskauer.com
Jessica Sonenshein
jsonenshein@proskauer.com
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036
212-969-3565
212-969-2900 (fax)

                                             s/ Lawrence G. Katz
                                             Jeffrey A. Chase, #05203
                                             Lawrence G. Katz, #32724
                                             JACOBS CHASE FRICK KLEINKOPF & KELLEY LLC
                                             1050 17th Street, Ste 1500
                                             Denver, CO 80265
                                             Telephone:    303-685-4800
                                             Fax:    303-685-4869
                                             E-mail:    jchase@jcfkk.com
                                                                 lkatz@jcfkk.com
                                             ATTORNEYS FOR DEFENDANTS

{00238767.DOC}